| District Court, Boulder County, Colorado<br>Court Address:<br>Boulder County Justice Center<br>1777 6th Street<br>Boulder, CO 80302 | DATE FILED<br>February 3, 2025 8:40 AM<br>FILING ID: B0BB8D221E34D<br>CASE NUMBER: 2024CV30905 |
|---|---|
| Plaintiff: Jane Doe<br>v.<br>Defendants: Hong, Davy et al. | ► COURT USE ONLY ► |
| Attorney or Party Without Attorney: (Name & Address)<br>Maria Ruskiewicz, PO Box 75, Kinross, MI 49752<br>Phone Number:  (303) 481-4405<br>E-mail:     AttorneyMariaColorado@gmail.com<br>Atty. Reg. #: 43919 | Case Number: 2024CV030905<br><br>Division:   2      Courtroom: H |

## AMENDED COMPLAINT AND JURY DEMAND

Plaintiff through her attorney, Maria Ruskiewicz, for her Amended Complaint and Jury Demand against Davy Hong, Blue Canyon Technologies LLC, Blue Canyon Technologies Inc., and Raytheon Technologies Corporation, per C.R.C.P. 15, alleges as follows:

### SUMMARY OF THE CASE

1. Plaintiff is a proven mechanic in the male-dominated commercial aerospace and defense industries. Plaintiff was hired as the Mechanical Technician II for Defendants Blue Canyon Technologies LLC, Blue Canyon Technologies Inc., and Raytheon Technologies Corporation under Davy Hong's team that he supervised and managed in August 2021.  She was hired after an extensive world-wide and nation-wide search. Prior to her hiring, female employees less to work outside their scope due to the broken culture, non-transparency and lack of employment training.  During the interview process, Blue Canyon Technologies LLC, Blue Canyon Technologies Inc., Raytheon Technologies Corporation with Dave Biancalana and another employee who assured Plaintiff that she would work within the scope of her employment position.

EXHIBIT
A-2

2. Plaintiff accepted the offer and moved closer to her employment location. She was the only woman assigned to an all male team. During her employment she had two male Supervisors, one gave false promises, while the other intentionally segregated Plaintiff to work more than twice as hard as her co-workers. For example, she worked on two projects during bake times (such as radios), while her Supervisor directed and instructed the male teammates to work only one project and take personal time while clocked into that project during bake times. However, her Supervisor had Plaintiff clock into another project and work during another project's bake time. In fact, Plaintiff's Supervisor would play ping pong with her male teammates during their bake off times while she was working a second order during the first order's bake time. Both Supervisors had Plaintiff work outside of her scope of employment as a Senior Mechanical Technician. Davy Hong intentionally signed off on her timesheets knowing her lunches were not accurately being deducted, treating her differently than the similarly situated non-exempt employees. Not only were her earned wages taken, but her matching and time accruals were affected.

3. The companies did nothing to cure nor correct the discriminatory actions nor pay the earned wages owed to Plaintiff when she gave notice of the different treatment. Defendants retaliated against Plaintiff with a menial raise and no promotion even though she had a great review. The parties used her voluntary self identification questionnaire against her during an EEOC claim, gave her nominal annual raises that were below the Mechanical Technician I start rate and federal inflation rate, as well as withheld FMLA coverage even though HR staff knew she would reasonably qualify.

4. As a result, Defendants violated the Colorado Anti-discrimination Statute, C.R.S. § 24-34-402, et seq. ("CADA"), Colorado's anti- luring statute C.R.S. § 8-2-104, Fair Labor

2

Standards Act ("FLSA"), Equal Pay Act of 1963, Equal Pay for Equal Work Act, Colorado Wage Act (CWA), and Wage Transparency Act ("WTA").

## PARTIES

5. Plaintiff incorporates by reference all the allegations contained in the above paragraphs as though set forth separately herein.

6. Plaintiff is, and at all times relevant to this Amended Complaint was, a resident of the State of Colorado.

7. Defendants Blue Canyon Technologies LLC is, and at all times relevant to this Amended Complaint was, a Colorado limited liability company with a principal office street address at 2550 Crescent Dr., Lafayette, CO 80026 and a principal office mailing address at 2550 Crescent Dr., Lafayette, CO 80026. This company is in good standing with their last period report filed in 2023, Document #20238262061.

8. Defendant Blue Canyon Technologies Inc is, and at all times relevant to this Amended Complaint was, a Colorado limited liability company with a principal office street address at 2550 Crescent Dr., Lafayette, CO 80026 and a principal office mailing address at 2550 Crescent Dr., Lafayette, CO 80026. This company's formation was filed with the state on May 19, 2016 Document #20161344414.

9. Defendant Raytheon Technologies Corporation[1] ("Raytheon") is a Virginia corporation with a principal place of business at 1000 Wilson Blvd, Arlington, VA, 22209 -3927. Defendant is authorized to – and does – conduct business in Colorado as a foreign corporation.

---

[1] Raytheon is listed as Raytheon Company in Good Standing ID number 19871070624 as a Foreign Corporation with a Registered Agent of C T Corporation System located at 7700 E Arapahoe Rd Ste 220, Centennial, CO 80112.

3

10. Raytheon owns as a wholly subsidiary Blue Canyon Technologies LLC and Blue Canyon Technologies Inc ("BCT" collectively) hiring hundreds of employees in addition to its thousands.

11. From August 2021 until now, Plaintiff was an Mechanical Technician II of Defendants' 2550 Crescent Dr., Lafayette, CO 80026 location.

12. At all relevant times, Raytheon has continuously been doing business in the State of Colorado and has continuously had at least 15 employees.

13. At all relevant times, Defendants, including Raytheon, have acted directly and indirectly as an employer in relation to employees and have continuously been an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

14. At all relevant times, Defendants, including Raytheon, have been an employer within the meaning of C.R.S. § 8-5-101(5), as it employs persons in the State of Colorado.

15. At all relevant times, Defendants, including Raytheon, have continuously employed employees engaged in commerce or in the production of goods for commerce within the meaning of Sections 3(b), (i) and (j) of the FLSA, 29 U.S.C. §§ 203(b), (i) and (j), has continuously been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Sections 3(r) and (s) of the FLSA, 29 U.S.C. §§ 203(r) and (s), in that said enterprise has continuously been engaged in related activities, including the sale of aerospace parts and designs, with an annual gross volume of sales or business revenue of over $100,000,000.00.

16. Upon information and belief, at all relevant times, Defendants, including Raytheon, have the authority and exerted operational control over the terms and conditions of employment of the employees of 2550 Crescent Dr., Lafayette, CO 80026 location, including the authority to direct and supervise the work of employees such as Plaintiff,

4

and the authority to make decisions regarding wage and hour policies and practices, including the decision to deprive Plaintiff of equal pay for equal work.

17. At all relevant times, Defendants, including Raytheon, have employed Plaintiff.

18. At all relevant times, Defendants, including Raytheon, have employed the Supervisors, that managed and supervised, addressed herein.

19. Davy Hong is an individual who resides in the state of Colorado was, at all times relevant to this Amended Complaint, served as the Supervisor for the company Defendants at their Lafayette location, is the Plaintiff's Supervisor, he managed and engaged in and aided and abetted acts of discrimination, harassment and retaliation under CADA as stated below. He worked at the same location where she worked.

20. Defendant Hong is an employer under the terms of CADA and at all relevant times acted directly and indirectly in the interest of the Corporate Defendants, in regard to his interaction with Plaintiff.

21. At all times relevant, Defendant Hong supervised and controlled the Plaintiff and other employees' work schedules and/or conditions of employment.

22. At all times relevant, Defendant Hong determined the annual review for employees under him, hours and work to be done, and signed off on their timesheets for wages for employees of the company Defendants, including Plaintiff.

23. At all times relevant, Defendant Hong managed and had access to employment records for the company Defendants.

24. Plaintiff was, at all times relevant to this Amended Complaint, an "employee" of Defendants Blue Canyon Technologies LLC, Blue Canyon Technologies Inc and Raytheon Technologies subject to the protections of the Colorado Wage Act (CWA) and defined by CADA. *See* C.R.S. § 8-4-101(5); 7 C.C.R. 1103-7, Rule 2.6.1.

25. At all times relevant to this Amended Complaint, Defendants were each "employer[s]" covered by the CWA as defined by CADA. *See* C.R.S. 8-4-101(6) ("'Employer' has the same meaning as set forth in the federal 'Fair Labor Standards Act,' 29 U.S.C. § 203(d)"); 7 C.C.R. 1103-7, Rule 1.6(A); 29 U.S.C. § 203(d) ("'Employer' means any person acting directly or indirectly in the interest of an employer in relation to an employee.").

## JURISDICTION AND VENUE

26. Plaintiff incorporates by reference all the allegations contained in the above paragraphs as though set forth separately herein.

27. This action is instituted pursuant to 29 U.S.C. § 216, to enforce the requirements of the Equal Pay Act of 1963 (the "EPA"), codified as Section 6(d) of the Fair Labor Standards Act, 29 U.S.C. § 206(d) and Colorado's Equal Pay for Equal Work Act, C.R.S. § 8-5-101 *et seq.*

28. This Court has original jurisdiction over this action pursuant to Article 6 § 9(1) of the Colorado Constitution, C.R.S. § 13-1-124(1)(a) and (b), and (c) and C.R.S. § 8-4-110.

29. Venue is proper before this Court pursuant to C.R.C.P. 98, because at least one Defendant resides in this District and because the claims, or some part thereof, arose in Boulder County, Colorado.

30. Venue for this proceeding is proper in the City and County of Boulder, Colorado pursuant to C.R.C.P. 98(c)(1) and 98(c)(5) as Defendants reside and conduct substantial business in this County and violated Colorado statutes in this County.

31. Each Defendant is subject to personal jurisdiction in Colorado pursuant to C.R.S. §§ 13-1-124(a) and (b) as each Defendant transacted business within this state and violated Colorado statutes within this state.

6

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

32. Plaintiff incorporates by reference all the allegations contained in the above paragraphs as though set forth separately herein.

33. All procedural prerequisites for filing this suit have been met. Plaintiff timely filed charges of discrimination based on sex, race, color, age, disability, national origin and retaliation against Defendants with the Equal Employment Opportunity Commission ("EEOC"), which, pursuant to a work-sharing agreement were dually filed with the Colorado Civil Rights Division ("CCRD").

34. Plaintiff's Charges of Discrimination were against Blue Canyon Technologies LLC, Blue Canyon Technologies Inc., and Raytheon Technologies Corporation with the Colorado Civil Rights Division ("CCRD") and U.S. Equal Employment Opportunity Commission ("EEOC") on or about May 2, 2023 alleging violations, including discrimination, unequal pay and retaliation based on race, color, sex, age, disability and national origin.

35. Each company Defendant received notice of Plaintiff's Charge of Discrimination from the EEOC and the EEOC had an opportunity to attempt conciliation concerning the same.

36. Each company Defendant had an opportunity to Respond with a Position Statement to Plaintiff's complaint for her to rebut.

37. Based upon the Position Statement submitted by Blue Canyon Technologies Inc., the non-response from Raytheon Technologies Company and Blue Canyon Technologies LLC and Plaintiff's Rebuttal to Blue Canyon Technologies Inc., the EEOC assigned the case to an investigator.

38. Plaintiff requested an early right to sue because of non-movement on the claims and was granted a Right to Sue within 90 days issued on September 25, 2024.

39. Plaintiff filed the instant action within ninety (90) days of the same.

## FACTUAL ALLEGATIONS

40. Prior to August 4th, 2021 Plaintiff was interviewed by company Defendants, Dave Biancalana and another employee for a Mechanical Technician II position discussing the scope of that position's duties.

41. On August 4th, 2021 Plaintiff received a written job offer from BCT. BCT had her sign that job offer, which offered her the position of Mechanical Technician II starting at $32 an hour plus benefits.

42. The scope of her employment included performing various mechanical tasks and ensuring the safety and functionality of aircraft components, requiring hands-on skills in disassembly, repair, and reassembly of equipment.

43. Plaintiff's verifiable experience within the Space Tech industry included 3 times the average rate of production, minimal error rate and extreme detail to production with superb accuracy coupled with the ability to work independently got her the position over other applicants.

44. Raytheon had her sign a Code of Conduct on August 26th, 2021.  BCT had her sign an Employee Handbook dated 12/5/2018  on August 25th, 2021. These documents were e-signed with receipt per requests prior to both her start date and employee contract signings of August 30, 2021. Raytheon's employee contract was e-signed using her BCT email after BCT's e-signed employment agreement on August 30, 2021.

45. That Employee Handbook is integrated contractually as referenced in her employee agreement.

8

46. That same day she signed Raytheon's IT Security training Acknowledgement. She was then assigned to an all male team supervised by Dave Biancalana.

47. This Supervisor supervised Plaintiff for 6 months to a year.

48. This Supervisor Dave Biancalana would promise and guarantee Plaintiff that because of her visible skill set and proven ability in the lab, that she would be Lead Technician within a year.

49. This Supervisor continued to promise spots for Plaintiff to work on specific projects with elite clients.

50. He made promises all the time, luring Plaintiff into working outside of her scope, with no intention to fulfill those promises that she relied on, but to make his team and production look fantastic until he transferred or got promoted.

51. After making false promises in omissions, Plaintiff succumbed to the acceptance that she was taken advantage of and suffered embarrassment by the humiliation.

52. Principal Technician Davy Hong Lead of Components, Batteries, and Solar Arrays took over as Supervisor for Plaintiff's team upon Dave Biancalana's transfer.

53. At all times she was a white female over 40 years old USC born and nationality with a known or perceived disability Supervised by Davy Hong. Davy Hong is a non-white male under 40 years Non USC born with possible dual citizenship recognized in Cambodia with no disability.

54. Plaintiff straight away poured her work ethics and brilliance into the task at hand. With her abilities fine tuned early in her career, and her passionate dedication she was able to work independently. She had and continues to do Senior Technician scope duties to include: Read, understand, and execute work instructions to build advanced and precise, electrical/mechanical assemblies, Collaborate and aide in the development of

work instructions with the engineering team, Increase efficiency of builds by understanding the engineering intent of the final product and make recommendations on the engineering to meet the intent more efficiently, Be a go to resource to troubleshoot non-conforming issues with the intent to find a path forward with the greatest efficiency, Take ownership and maintain build documentation for assemblies being built. Including filling out work, instructions, non-conformance reports and logging time against the applicable work order, Mentor junior technicians, assist in training for team development, improve assembly instructions, drawings, procedures, workspace organization, and production flow. She had continually worked outside her titled employment scope to achieve completion times, above average production rates, and minimal non-conformances.

55. She worked overtime, temporary second shift, assisting other teams, last minute weekend support, and maximizing her down time for improvements per requests of her Supervisors.

56. Although, she's earned awards for unwavering support and certifications for training. Plaintiff as a Technician II was working outside of her scope doing Senior Technician duties and being paid lower than the offered Technician I position of $19 to $34 per hour posted on November 16, 2023 via ZipRecruiter.

57. Currently she is being paid $33.92 per hour. Last year she received a menial raise of 5.99% which was below the 2022 Federal inflation rate of 8.3%.

58. During Plaintiff's employment the work environment was one of freestyle, especially before her complaint to HR on November 9, 2022.

59. Her Supervisors and employees, including team mates, would routinely and freely take time for eating, drinking, playing rounds of ping pong, leaving and staying on campus for

personal use, or to socialize with others or their personal electronics both at the workstation and away, all while on the clock.

60. She couldn't understand how her team, her supervisor and a lot of employees were taking more than an hour of free time a day and every work day.

61. This paid personal time was taken beyond the non-exempt employees' two ten minute breaks and lunches allowed per the employee handbook.

62. Employees would leave campus for personal purposes by taking paid unlimited breaks by using the time keeping system as allowed and instructed to use by company Defendants and Supervisor Davy Hong.

63. Davy Hong and her team mates would routinely play ping pong for 20-30 minutes a crack with male employees (three in specific) multiple times during the work shift without clocking out and getting paid on company or project time.

64. On November 4th, 2022, Plaintiff while using the correct meal start and meal stop buttons for digital time keeping on the company Defendants' platform, was told by a female employee (Employee 1) who holds the title of Test Engineer II and Acting Lead of the Electrical Test team, that meals under 30 minutes were to be compensated per the Employee handbook.

65. She proceeded to show her on the company Defendants' intraweb site and read the section "Meals and Work Breaks (adopted 12/5/2018)," and read outloud the entire section as it reads:

   a. "BCT encourages non-exempt and exempt employees to take meals and work breaks during the workday. For non-exempt employees, two separate 10-minute paid breaks are permitted each workday.

b.  Meal periods are counted as unpaid time when taken away from the employee's working area and are at least 30 minutes long. Non-exempt employees are required to clock out when taking unpaid meal breaks."

66. She then explained that lunches under 30 minutes are compensated per the wording in the employee handbook. This was witnessed by another coworker (Employee 2), who is a Senior Test Technician of the Electrical Team.

67. Employee 2 chimed in and concurred with her and stated that lunches are paid for. Employee 1 continued to state that she didn't want any "shenanigans" because she previously talked to payroll who confirmed that lunches are paid for.

68. Employee 1 instructed her team, including those paid hourly (non-exempt), to not use the "Meal Start" and "Meal End" buttons on the timekeeping software because those buttons result in uncompensated time and directed them on an alternative avenue.

69. Employee 1 is a female that works outside of her scope of employment without equal pay. She assumed the role of Lead for the Electrical Test team without the title and pay of Lead. This was confirmed in a conversation between Plaintiff and male Manufacturing Engineer I in August 2023. He stated that she had been training the test team to review data and had been signing off data reports in which only a Lead or Manager were allowed to as outlined in a BCT policy document.

70. Plaintiff in utter surprise immediately contacted her Supervisor Davy Hong via Teams messaging about compensated meals under thirty minutes. Supervisor Davy Hong confirmed that meals under 30 minutes are compensated.  Plaintiff responded that she will head to payroll to sort this out. Supervisor Davy Hong  responded that he wanted to speak to Plaintiff first acknowledging this to be true.

71. Directly after the messaging Plaintiff went to Supervisor Davy Hong's desk and had a conversation with him. She asked why he didn't tell her, especially when he knew and was required per his position to review, authorize and sign off on her time sheets that she wasn't getting her earned wages. He stated "he knew that she wasn't being compensated and that he did not tell her on purpose."

72. He then stated that he had previously used the "Meal Start" and "Meal End" buttons, saw that he was not being compensated for his meal and stopped using those buttons.

73. Plaintiff told him that this cost her around a $5,000 minimal loss a year. He nodded his head yes and stated it's a lot of money. He turned to his computer, pulled up the current employee handbook on the company intraweb site.

74. Supervisor Davy Hong went to the section "Meals and Work Breaks (adopted 12/5/2018)." He pointed at the section and told Plaintiff that it was her fault. She asked him why he didn't say anything. He blew that off and responded with "now that you know, don't go around telling everyone else. When you do take lunch, don't do the full 30 minutes. Maybe just 10 or 15. Also, don't make it obvious."

75. Plaintiff asked how she should clock into meals to be compensated, whether it be clock into breaks (which allows unlimited compensation, as in unrestricted breaks with no time limit nor deductions of wages over a certain amount of time, per the timekeeping platform and routinely used company wide by employees), remain clocked into a work order (theft of government contracts) or clock into indirect manufacturing (which allows for unlimited compensation as well).

76. At this point, Plaintiff realized that her Supervisor Davy Hong intentionally forced Plaintiff to work more than twice as hard as her co-workers. For example, she worked on two projects during bake times (such as radios), while her Supervisor directed and

instructed the male teammates (as confirmed by her coworkers) to work only one project and take personal time while clocked into that project during bake times. However, her Supervisor had Plaintiff clock into another project and work during another project's bake time.

77. Supervisor Davy Hong stated "Sure." At the end of their conversation, he treated her like a little girl with his final statement "One day you'll understand why I didn't tell you."

78. The following Tuesday, November 8th 2022, Plaintiff sent out an email to talk to HR. A meeting took place on Wednesday, November 9th, 2022, in-person with the Director of Human Resources and Human Resources Manager and intermediately, via phone, with Payroll Manager during which Plaintiff reported her discovery of her uncompensated lunches, the above discussion with Supervisor Davy Hong, and the discrimination taking place under his Supervision as well as concerns for wage theft and theft of project/client funds by rampant use of employees.

79. The HR personnel were not trained nor familiar with the handbook nor lunch breaks.

80. This conversation and notice of discrimination again was discussed between Plaintiff, Director of Human Resources, Supervisor Davy Hong, and Davy Hong's Supervisor that is Manufacturing Technician Manager on December 9, 2022.

81. During that conversation the Director of Human Resources stated "I'm guessing maybe that one of the pieces of confusion was the stacking of breaks and allowing them." Straight away confirming that there were extreme tolerances allowed for the time keeping platform and procedure and protocol variances that were directed or accepted subjectively to employees.

82. During this conversation Supervisor Davy Hong came up with a false narrative to save his hide while dismissing Plaintiff's allegations against him. It was refuted by the Plaintiff with the material evidence of the copy of the Teams messaging conversation.

83. Immediately upon being discriminated against within her work place, publicly humiliated and having her earned wages withheld, Plaintiff had an episodic medical reaction associated with her disability that required her to request protection under the Family Medical Leave Act ("FMLA") with short term disability, while being medically treated on an emergency basis by a qualified provider.

84. Plaintiff had to request this information from HR more than once. She had to find out on her own, as HR staff members would not be forthcoming with this information, knowing she reasonably could qualify and told her that she could only take her vacation days or unpaid time, threatening her livelihood and job security. Plaintiff had to continually request information before she was given the truth.

85. In addition HR and her Supervisor during meetings thereafter would blame her and make statements about maybe this not being the place for her, when she would bring up any other issue.

86. Supervisor Davy Hong was allowed to maintain his position and have no recourse by company Defendants based upon Plaintiff's complaints with HR and her Supervisor.

87. The Defendants relocated Plaintiff to the City of Boulder location, briefly as it was not as hands on lab work as she was hired to do. She requested to go back to the lab and Lafayette location because it was what she was hired to do and she lived near there.

88. The company Defendants then tried to make demands on employees only to allow a certain range of variances for certain manufacturing buttons such as indirect, break, lag

time and more, still leaving it up to the untrained Supervisors to discriminatorily catch, instead of correcting the system.

89. The time keeping system that allows for infinite personal times is still accessible to employees including Davy Hong.

90. The handbook that Plaintiff originally contracted for included lunch and breaks, the modified handbooks (multiple versions) have all but eliminated her earned and contracted lunch break, making her work more per week.

## **FIRST CLAIM FOR RELIEF**

### **(Discrimination in Violation of the Equal Pay Act of 1963)**

91. Plaintiff incorporates by reference all allegations contained in the above paragraphs as though set forth separately herein.

92. Since August 2021, Defendants have violated Sections 6(d)(1) and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206(d)(1) and 215(a)(2) by paying Plaintiff wages at a rate less than the rate at which Defendants pay its male employees.

93. At all relevant times, Plaintiff, a female Mechanical Technician II, has performed work that was substantially equal to and beyond the scope of that of male employees, such as Mechanical Technician II and Senior Mechanical Technicians, considering the skills, effort, and responsibilities of the job. At all relevant times, Plaintiff, a female Mechanical Technician II, worked under conditions similar to male employees, such as Mechanical Technician II and Senior Mechanical Technicians.

94. At all relevant times, Defendants paid Plaintiff at lower rates than male employees in the same or similar positions and those positions matched to her work conducted outside of her scope of employment.

95. As a result of the acts complained of above, Defendants unlawfully have withheld and are continuing to withhold the payment of wages due to Plaintiff.

96. The unlawful practices complained of above were willful.

97. The unlawful practices complained of above were willful.

98. As a direct and proximate result of Defendants' above-described actions, Plaintiff has suffered damages, including lost wages and benefits, and she is entitled to such general and special damages, economic damages, liquidated damages, and attorneys' fees and costs as permitted by law.

### SECOND CLAIM FOR RELIEF
**(Discrimination in Violation of the Equal Pay for Equal Work Act, C.R.S. §§ 8-5-101 *et seq.* (the "Colorado Equal Pay Act"))**

99. Plaintiff incorporates by reference all allegations contained in the above paragraphs as though set forth separately herein.

100.    C.R.S. § 8-5-102(1) provides, in pertinent part: "An employer shall not discriminate between employees on the basis of sex, or on the basis of sex in combination with another protected status as described in section 24–34–402(1)(a), by paying an employee of one sex a wage rate less than the rate paid to an employee of a different sex for substantially similar work, regardless of job title, based on a composite of skill; effort, which may include consideration of shift work; and responsibility[.]"

101.    The Colorado Equal Pay Act came into effect on January 1, 2021. All wrongdoing thereafter is encompassed under this statute.

102.    Since August 21, 2021, Defendants violated C.R.S. § 8-5-102(1) by paying Plaintiff wages at a rate less than the rate at which Defendants pay its male employees for performing substantially similar work.

103.    At all relevant times, Plaintiff, a female Mechanical Technician II, has performed work that was substantially equal to that of male employees, such as Mechanical Technician II and Senior Mechanical Technicians considering the skills, effort, and responsibilities of the job. At all relevant times, Plaintiff, a female Mechanical Technician II worked under conditions similar to male employees, such as Mechanical Technician II and Senior Mechanical Technicians.

104.    At all relevant times, Defendants paid Plaintiff at lower rates than male employees, such as Mechanical Technician II and Senior Mechanical Technicians.

105.    As a result of the acts complained of above, Defendants unlawfully have withheld and are continuing to withhold the payment of wages due to Plaintiff.

106.    The unlawful practices complained of above were willful.

107.    As a direct and proximate result of Defendants' above-described actions, Plaintiff has suffered damages, including lost wages and benefits, and she is entitled to such general and special damages, economic damages, liquidated damages, and attorneys' fees and costs as permitted by law.

### THIRD CLAIM FOR RELIEF
**Failure to Pay all Earned Wages in Violation of the Colorado Wage Act ("CWA"), C.R.S. § 8-4-101, *et seq.***

108.    Plaintiff incorporates by reference all allegations contained in the above paragraphs as though set forth separately herein.

109.    Plaintiff is employed by Defendants.

110.    Defendants were Plaintiff's "employer" as that term is defined by the Colorado Wage Act ("CWA"), because Defendants suffered or permitted her to work and Plaintiff acted

directly or indirectly in the interests of an employer in relation to her. C.R.S. § 8-4-101(6).

111.    Plaintiff was Defendants' "employee" as that term is defined by the CWA, because she performed labor for the benefit of Defendants in which Defendants commanded when, where, and how much labor or services would be performed, and exercised control over Plaintiff, who performed the primary work of the Defendants. C.R.S. 8-4-101(5).

112.    The applicable Handbook integrated within Plaintiff's employment contract required Defendants to pay Plaintiff for her lunch hours worked, affecting pay owed for over forty hours and matching or accrued benefits in each given workweek. 7 CCR 1103-1 4.1.1(A).

113.    Defendants failed to compensate Plaintiff for the earned, vested, and determinable wages or compensation recited above to this very day. C.R.S. § 8-4-109.

114.    Defendants' failure to pay overtime premiums and to pay earned, vested, and determinable wages as cited herein was willful.

115.    As a result of Defendants' conduct as recited herein, Plaintiff has suffered lost wages and lost use of those wages in an amount to be determined at trial.

116.    Plaintiff is entitled to recover in a civil action the unpaid balance of the full amount of the wages owed to her, any statutory penalties due, and any costs or attorney fees due. C.R.S. § 8-4-109, 8-4-110.

## FOURTH CLAIM FOR RELIEF

### Colorado Wage Act C.R.S. §§ 8-4-120 *et seq.* Retaliation

117.    Plaintiff incorporates by reference all allegations contained in the above paragraphs as though set forth separately herein.

19

118.    The Colorado Wage Act prohibits an employer from harassing an employee because the employee engaged in protected activity related to the employee's wage and hour rights.

119.    Defendants harassed Plaintiff because she complained about due wages and discrimination.

120.    Defendant's conduct described herein was attended by circumstances of fraud, malice, or willful and wanton conduct within the meaning of C.R.S. § 13-21-201.

## FIFTH CLAIM FOR RELIEF
### Violation of the Wage Transparency Act ("WTA"), C.R.S. § 24-34-402(1)(i)

121.    Plaintiff incorporates by reference all the allegations contained in the above paragraphs as though set forth separately herein.

122.    At all times relevant, Plaintiff was an "[e]mployee" of Defendants. *See* C.R.S. § 24-34-401(2).

123.    401(3).139. At all times relevant, Defendants were Plaintiff's "[e]mployer" *See* C.R.S. § 24-34-

124.    The wage transparency provision of the Colorado Anti-Discrimination Act ("CADA") states that it is a discriminatory or unfair employment practice for employers to discharge and/or discriminate against an employee because the employee "inquired about, disclosed, compared, or otherwise discussed the employee's wages." C.R.S. § 24-34-402(1)(i).

125.    Immediately prior to Plaintiff's FMLA harassment, and prior thereto, Plaintiff engaged in protected activity when she inquired about and/or discussed her wages, including by inquiring about when Defendants intended to correct the rate at which she was being

paid to reflect her full salary and a date certain for when Defendants would pay Plaintiff the wages she had earned that Defendants withheld.

126.    After Plaintiff engaged in the above-described protected activity, Defendants retaliated against Plaintiff because of her protected activity by withholding FMLA and short term disability applications, information and assisting her with papers. Defendants, refused to pay Plaintiff all her earned wages and made illegal deductions to Plaintiff's wages, and then harassed her by threatening her having to take unpaid time off and having no other options, such as FMLA or short term disability, even though they were options, not giving her a solid reviews with appropriate raises nor advancing her within the companies.

127.    This harassment and retaliation continued as Plaintiff brought up a concern to HR to which a meeting was held.  HR stated "You weren't really working, were you."  followed by her supervisor's statement of "Maybe this isn't the place for you." In response to her concern.

128.    Defendants' actions were intentional and committed with malice or reckless indifference to Plaintiff's rights under the WTA.

129.    As a direct and proximate cause of Defendants' above-described actions, Plaintiff has suffered damages, including lost wages and benefits, garden-variety emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damage, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

### SIXTH CLAIM FOR RELIEF
**Unlawful Employment Practices in Violation of CADA**

**Sex, Race, Color, Age, Disability, National Origin and Retaliation**

130.    Plaintiff incorporates by reference all the allegations contained in the above paragraphs as though set forth separately herein.

131.    Defendant companies engaged in acts defined by the Colorado Anti- Discrimination Act to be discriminatory or unfair employment practices, including, but not limited to, retaliating against Plaintiff for her protected inquiries and/or discussion of her wages.

132.    Defendant Davy Hong  knowingly aided, abetted, incited, compelled, or coerced Defendant companies to engage in those acts.

133.    Defendant Davy Hong's above-described conduct was willful and wanton, and/or committed with reckless indifference to Plaintiff's protected rights.

134.    Defendant companies discriminate against Plaintiff's protected rights by not educating, training nor remedying discrimination practices known by them.

135.    Because Defendant Davy Hong aided, abetted, incited, compelled, or coerced Defendant companies to engage in acts defined by CADA to be discriminatory or unfair employment practices and the Defendant companies have not remedied the discriminatory practices, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, inconvenience, and other non-pecuniary losses; and she is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

## SEVENTH CLAIM FOR RELIEF

### (Negligence Hiring and Retention)

136.    Plaintiff incorporates by reference all the allegations contained in the above paragraphs as though set forth separately herein.

137.    Commencing on in August 2021, Defendant Hong and Defendant companies negligently failed to supervise, instruct, and prevent employees, including Defendant Hong from discriminating against Plaintiff and withholding her earned money.

138.    Defendant companies had negligently failed to supervise, instruct, and prevent employees, including HR staff, of understanding the Employee Handbook, time keeping protocols and buttons, controlling the time keeping platform, and educating the staff on discriminatory practices and how to remedy those practices upon notice.

139.    Defendant companies owed a duty to Plaintiff to supervise the employees, and the Defendant Supervisor specifically, to prevent him from discriminating against Plaintiff and preventing wage theft.  Defendants failed to remedy the discrimination and moved Plaintiff victim to a new location without training or remedying the Supervisor at fault. Defendant companies breached their duty to Plaintiff.

140.    As a proximate result of the negligence of these defendants and the breach of their duties to supervise the employees, Plaintiff suffered the above-described injuries and damages.

## EIGHTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress - Outrageous Conduct)

141.    Plaintiff incorporates by reference all the allegations contained in the above paragraphs as though set forth separately herein.

142.    The above-described actions of Defendants were extreme and outrageous.

143.    The actions of these defendants were performed recklessly and with the intent of causing Plaintiff severe emotional distress.

144.    The actions of these defendants did cause Plaintiff severe emotional distress, including but not limited to: stress, fear, anger, shock, mental anguish, and pain and

suffering.. On or about November 4th,and 9th 2022, Defendants confirmed wage theft from the Plaintiff, confirmed that her coworkers got paid personal time and to take that paid personal time, she would have to use unethical time keeping standards that amount to theft. In addition, she was threatened when she suffered a medical episode due to the Defendants actions.

145.    The conduct of Defendants was extreme and outrageous.

## NINTH CLAIM FOR RELIEF - Defendant Companies

### (Conversion)

146.    Plaintiff is, and at all times pertinent to this cause, entitled to the possession of money in form of wages and cash, having a value of over $20,000.

147.    On or about August 2021 and each pay date thereafter until current Defendant companies converted to its own use money in form of wages and cash which were the property of Plaintiff.

148.    Defendant companies are in lawful possession of the property in question, On or about November 2022 and thereafter plaintiff demanded the return of the money owed and earned, but Defendant companies failed to return the property to Plaintiff and continues to refuse to return it.

149.    To date, Defendant companies have failed to return this money to Plaintiff.

150.    As a result of this failure, Plaintiff has and will continue to suffer losses and damage.

151.    Accordingly, Plaintiff is entitled to damages for this wrongful conversion.

## TENTH CLAIM FOR RELIEF -Defendant Companies-

### (Breach of Contract)

152.    On August 4, 2021 Plaintiff and Defendant companies entered into a job offer, then on August 25th an Employee Handbook dated 12/5/2018 and then on August 30th an

employee contract (the "Agreement"), which integrated the Employee Handbook dated 12/5/2018.

153.    As part of the Agreement, Defendant agreed to the following terms: "Meal periods are counted as unpaid time when taken away from the employee's working area and are at least 30 minutes long. Non-exempt employees are required to clock out when taking unpaid meal breaks.", another words if lunch is taken at employee's working area (no matter the time) paid meal period and even if taken away from employee's working area, so long as the meal period is under 30 minutes, it's paid. Clocking out only occurs if both elements are met for non-exempt, which is taken away from the employee's working area and 30 minutes or more.

154.    Defendant companies  intentionally and materially breached its Agreement with Plaintiff by the following actions: refusal of paying her meal periods even though her co-workers and time sheets have verified her staying within the employee working area during meal time, working during meal time, and taking meal times under thirty minutes if not at employee's working area.

155.    Defendants worked Plaintiff outside of her scope and pay.

156.    As a result of the breach(es) of the Agreement by Defendant companies, Plaintiff has incurred damages and will continue to incur damages.

157.    Plaintiff fully performed its obligations under the Agreement.

## ELEVENTH CLAIM FOR RELIEF  -  Defendant Companies
### (Negligent Misrepresentation)

158.    Plaintiff incorporates by reference the allegations above as if repeated here.

159.    Defendant companies gave false information to Plaintiff in the course of a transaction in which Defendant companies had a financial interest.

160.    Defendant companies gave the information to Plaintiff for Plaintiff's use in the business transaction of forming an Agreement as an employee that meal breaks would be included and that she would be climbing the corporate ladder based upon her work and experience, without discrimination.

161.    Defendant companies were negligent in obtaining or communicating the information to Plaintiff.

162.    Defendant companies gave the information with the intent or knowledge that Plaintiff would act in reliance on the information and work outside of the scope of employment, fulfill untimely requests and overtime.

163.    Plaintiff reasonably relied on the information supplied by Defendant companies.

164.    Plaintiff's reliance on the information supplied by Defendant companies caused damage to Plaintiff as more fully set forth above, and Plaintiff claims for damages in an amount to be determined at trial.

## TWELFTH CLAIM FOR RELIEF - Defendant Companies
### (False Representation)

165.    Plaintiff incorporates by reference the allegations above as if repeated here.

166.    Defendant companies made the following false representations of past or present material facts to Plaintiff: that based upon her experience and work she would be able to become a lead within a year and work on elite projects. In addition, the Defendant companies knew she would use the meal in and meal out buttons for the paid meal times with those being set for auto deductions.

167.    Defendant companies made the representations knowing them to be false or being aware that she did not know whether they were true or false, specifically knowing that she would not be promoted due to discriminatory practices and personal gain of the

26

statement maker and that the time keeping platform was for the instructed employees to get meals compensated.

168.    Defendant companies made the representations with the intent that Plaintiff would rely on the representations and did induce Plaintiff to act to Plaintiff's detriment.

169.    Plaintiff justifiably relied on the representations.

170.    As a result of Plaintiff's reliance, Plaintiff incurred damages and losses as more fully set forth above, and Plaintiff claims for the same.

## THIRTEENTH CLAIM FOR RELIEF - Defendant Companies
## (Promissory Estoppel)

171.    Plaintiff incorporates the allegations above as if repeated here.

172.    Defendant companies made promises to Plaintiff that it would promote her to lead within a year of hiring and have her join an elite project as an employee made by Defendant companies to Plaintiff.

26. Defendant companies should reasonably have expected that Plaintiff would rely on Defendants' promises.

173.    Plaintiff did rely on Defendants' promises.

174.    As a result of Plaintiff's reliance on the promises of Defendants, Plaintiff incurred damages and losses as more fully set forth above, and Plaintiff claims for same.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court enter judgment in her favor, and against each Defendant, for the following relief:

A.  All appropriate injunctive and declaratory relief;

B.  Economic damages, as established at trial, including Plaintiff's back pay and front pay damages;

C.   Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, and garden-variety emotional distress, pain, inconvenience, mental anguish, and humiliation;

D. Statutory penalties pursuant to C.R.S. § 8-4-120(3)(a)(V);

E. Liquidated damages pursuant to C.R.S. § 8-4-120(3)(a)(VI);

F. Punitive damages for Plaintiff's claims pursuant to the WTA, as permitted by law;

G. Unpaid wages/compensation, including Plaintiff's earned salary and bonus compensation, and the unlawful deductions made to Plaintiff's wages;

H. Mandatory penalties under C.R.S. § 8-4-109(3)(b)(I), in an amount to be determined at trial;

I.   Additional penalties under C.R.S. § 8-4-109(3)(b)(II) based on the willfulness of the Defendants' violations of the CWA, in an amount to be determined at trial;

J. Statutory prejudgment and postjudgment interest at the highest lawful rate, including interest on Plaintiff's unpaid wages at the highest lawful rate per annum from the date the wages were first due;

K. Attorneys' fees, costs,expert witnesses and nominal damages along with all other damages permitted by C.R.S. § 24-34-301, et seq. and C.R.S. § 8-5- 101, et seq.;

L. The appropriate tax-offset permitted by law; and

M. Such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demands a jury on all claims and issues so triable.

Respectfully submitted this January 28, 2025 by:

*s/ Maria Ruskiewicz*

Maria Ruskiewicz #43919 Attorney Maria
P.O. Box 75, Kinross, MI 49752

(303) 481-4405 (t)
AttorneyMariaColorado@gmail.com

*Attorney for Plaintiff*